UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOAZZAM PIRZADA, | § § § | |
| Plaintiff, | § § | Case No.: |
| v. | § § | |
| AAA TEXAS, LLC | § § | |
| Defendant. | § § § § | TRIAL BY JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

MOAZZAM PIRZADA, (hereinafter "Plaintiff"), complains of AAA TEXAS, LLC (hereinafter "Defendant" or "AAA"), and for cause of action would show the Court as follows:

### INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this complaint and complains about discrimination on the basis of race, religion, and national origin under Title VII of the Civil Rights Act of 1964 (Title VII), as amended and 42 U.S.C. § 1981.

3. Plaintiff files this complaint and complains about retaliation for a protected

1

activity under Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

4. This action seeks compensatory damages, plus lost wages (past, present, and future), punitive damages, attorney's fees, taxable court costs, pre-judgment, and post-judgment interest.

## PARTIES

5. Plaintiff, Moazzam Pirzada is a resident of Katy, Texas.

6. Defendant, AAA Texas, LLC can be served upon its registered agent, Corporation Service Company d/b/a CSC-Lawyers Inco., 211 E. 7th St., Ste. 620, Austin, Texas 78701.

## VENUE

7. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division, in that Defendant can be said to reside and/or do business in this district as required under 28 U.S.C. § 1391(e). Alternatively, venue is appropriate because a substantial part of the events or omissions giving rise to the claims occurred here. *See* 28 U.S.C. § 1391(b)(2).

## JURISDICTION

8. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) under Title VII, as amended, and 42 U.S.C. § 1981, for employment discrimination based on race, religion, and national origin, and retaliation for a protected activity.

## PROCEDURAL REQUISITES

9. All conditions precedent to the filing of this action have been met by Plaintiff

in that he has filed a timely complaint with the Equal Opportunity Commission and has exhausted all other administrative remedies from said agency to pursue his claims.

## FACTS

10. Mr. Pirzada identifies as Asian.

11. Mr. Pirzada was born in Pakistan.

12. Mr. Pirzada practices Islam.

13. Mr. Pirzada was hired by Defendant in August of 2014 and was promoted to Branch Manager in January of 2015.

14. In his position as Branch Manager, Connie Nagy was Mr. Pirzada's supervisor.

15. On September 9, 2016, Mr. Pirzada submitted a request for a half-day of unpaid time off in observance of the Muslim Holiday Eid al-Adha.

16. Religious accommodation requests were regularly granted by Connie Nagy with little to no investigation or need for verification of such requests.

17. Connie Nagy required Mr. Pirzada to provide a full list of all Muslim holidays, and a signed letter from his Islamic Center which Mr. Pirzada provided.

18. In addition, Connie Nagy openly argued with Plaintiff about his religious convictions and the veracity of same.

19. Ultimately, AAA "conditionally accepted" Mr. Pirzada's time off request, but he was informed by Maryann Zacharo that the documentation he provided was "unacceptable." Plaintiff feared for his career at AAA and thereby suffered great stress because of these actions by AAA.

20. Connie Nagy would go on to allow other religious accommodation requests for Plaintiff's non-Muslim co-workers without question and without asking for verification.

21. Drinking alcohol is prohibited by Muslim religious law, but Connie Nagy would consistently hold meetings in bars despite Mr. Pirzada asking her to hold these meetings in a location in which he could attend.

22. Mr. Pirzada is one of, if not the only Muslim manager working for AAA in the entire state of Texas.

23. In October of 2016, Connie Nagy instructed the Plaintiff to terminate a Hispanic employee for violating a company policy, but prohibited Plaintiff from firing an African American employee for multiple similar infractions.

24. Because Plaintiff disagreed with the unequal treatment of the two employees, Plaintiff referred both employees to HR and informed Connie Nagy that he had done so.

25. Later that month, Connie Nagy removed Mr. Pirzada from his branch in the Galleria area and reassigned him to the far-flung Cypress branch.

26. Connie Nagy's stated reason for this move was complaints from branch employees regarding Mr. Pirzada.

27. This was a retaliatory fabrication because Mr. Pirzada was well-liked by the employees who worked with him and under him at the Galleria area AAA location.

28. In addition to moving Mr. Pirzada to an inconvenient branch location, Connie

Nagy issued him a Performance Improvement Plan soon after the branch move.

29. Connie Nagy also used AAA's evaluation process to discriminate against Mr. Pirzada.

30. AAA's performance evaluations have 5 levels: Unsatisfactory, Needs Improvement, Achieves, Exceeds, Distinguished.

31. In March of 2015, Melanie Lyman rated Mr. Pirzada as "achieves" in every evaluation criterion.

32. In March of 2016, Connie Nagy rated Mr. Pirzada as "achieves" or "exceeds" in nearly every evaluation criterion.

33. Just five months later, on August 31, 2016, however, Connie Nagy rated Mr. Pirzada as "needs improvement" in nearly every criterion on his mid-year review.

34. The August 31 review of "needs improvement" resulted in Mr. Pirzada being denied a salary increase.

35. Melanie Lyman and Connie Nagy were responsible for hiring and providing staff to Mr. Pirzada. Despite Mr. Pirzada asking over 30 times for more employees in his branches, Melanie Lyman and Connie Nagy refused to hire new trainees to Mr. Pirzada's branches because of discriminatory and retaliatory bias.

36. Melanie Lyman and Connie Nagy knew that Mr. Pirzada's branches could not meet sales goals if it was understaffed.

37. AAA a has policy of paying bonuses to existing employees that bring new employees into the company.

38. Mr. Pirzada introduced at least 12 qualified candidates to Connie Nagy, many of whom went on to work as sales managers at reputable companies.

39. Connie Nagy rejected and refused to interview nearly all of the candidates presented by Mr. Pirzada due to his religious convictions and in retaliation for his disagreements with her leadership style. This decision caused Mr. Pirzada to lose out on new hire bonuses.

40. Connie Nagy's retaliation and discrimination continued into 2017. On February 17th, 2017, Connie Nagy made an unannounced visit to Plaintiff's branch and took Plaintiff into the break room so she could verbally lambast him for anonymous remarks on her leadership survey.

41. Immediately after this discussion, Connie Nagy placed Mr. Pirzada on a manager development plan and told Mr. Pirzada she would be removing important branch support staff (branch administrator) from his branch.

42. On May 3, 2017, Mr. Pirzada submitted an FMLA request so he could go to Pakistan to visit his ailing mother. Mr. Pirzada specifically asked Ms. Nagy to submit his request to AAA's Benefits Department in time for his June 14 departure date.

43. On May 17, 2017, Mr. Pirzada checked on the request and Connie Nagy told Mr. Pirzada that she still needed to check with AAA's Benefits Manager, Maryann.

44. On May 25, 2017, Mr. Pirzada again checked on the request, and Connie Nagy told Mr. Pirzada that she had not connected with Maryann.

45. Finally, in the afternoon of May 25, Connie Nagy connected with Maryann, but then let Mr. Pirzada know that she needs to also get direction from HR.

46. Mr. Pirzada's FMLA leave request was finally approved in early June, over a month after he requested it.

47. On his June 13th leave date, Ms. Nagy publicly escorted Mr. Pirzada out of the AAA location as if it were his last day of work.

48. In sum, Connie Nagy's onerous requirements and delay in granting Mr. Pirzada's religious accommodation request, negative performance reviews resulting in Mr. Pirzada not receiving a raise, onerous requirements and delay in granting Mr. Pirzada's FMLA leave, branch removal, and systematic understaffing of Mr. Pirzada's branches are results of discriminatory and retaliatory bias.

## COUNT I

### RACE DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.*

49. Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

50. Title VII prohibits employers from discriminating against employees based on their race.

51. Defendant, by and through its agents and employees, specifically Connie Nagy, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*

52. Defendant discriminated against Plaintiff by not giving him a pay raise on the basis of a false performance review and placing onerous restrictions on his religious accommodation and FMLA requests.

53. Had Plaintiff been white, he would not have suffered the adverse employment actions he did.

54. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C §2000e, *et. seq.* Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

## COUNT II

**NATIONAL ORIGIN DISCRIMINATION UNDER 42 U.S.C. §2000e,** *et. seq.*

55. Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

56. Title VII prohibits employers from discriminating against employees based on their national origin.

57. Defendant, by and through its agents and employees, specifically Connie Nagy, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

58. Defendant discriminated against Plaintiff by not giving him a pay raise on the basis of a false performance review, and placing onerous restrictions on his religious accommodation and FMLA requests.

59. Plaintiff suffered the adverse employment action he did because of his Pakistani national origin.

60. As a direct and proximate result of the Defendant's conduct that violated 42

U.S.C §2000e, *et. seq.* Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

## COUNT III

**RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. §2000e,** *et. seq.*

61. Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.
62. Title VII prohibits employers from discriminating against employees based on their religion.
63. Defendant, by and through its agents and employees, specifically Connie Nagy, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*
64. Defendant discriminated against Plaintiff by not giving him a pay raise on the basis of a false performance review and placing onerous restrictions on his religious accommodation and FMLA requests.
65. Plaintiff suffered the adverse employment action he did because he is of the Muslim faith.
66. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C §2000e, *et. seq.* Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

## COUNT IV

**RACE AND NATIONAL ORIGIN DISCRIMINATION UNDER 42 U.S.C. §1981**

67. Plaintiff re-alleges and incorporates into count four paragraphs 1-46.
68. The statute located at 42 U.S.C. § 1981(a) provides that "[a] persons within the

jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

69. "'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981.

70. Defendant, by and through their agents and employees, including but not limited to Connie Nagy, engaged in the aforementioned practices, policies, customs and usages made unlawful by 42 U.S.C. §1981.

71. Had Plaintiff been of a different race, religion, and national origin he would not have been subjected to discrimination that caused him to be the subject of adverse employment action.

72. By the conduct described above, Defendant, AAA of Texas intentionally deprived Plaintiff of the same rights as are enjoyed by white, American, and/or non-Muslim individuals to the performance, enjoyment and all benefits and all benefits and privileges, of his contractual relationship with Defendant, in violation of 42 U.S.C. § 1981.

73. As a direct, legal and proximate results of his discrimination, Plaintiff has sustained economic injuries, resulting in damages in an amount to be proven

at trial.

## COUNT V

## RETALIATORY ADVERSE EMPLOYMENT ACTION

74. Plaintiff re-alleges and incorporates into count five paragraphs 1-40.

75. Defendant, by and through its agents and employees, specifically Connie Nagy, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

76. Defendant, acting by and through its employees, maintained a policy of retaliation, in violation of the foregoing statutes against Plaintiff.

77. If Plaintiff had not opposed an unlawful employment practice, he would not been the subject of adverse employment action.

## PUNITIVE DAMAGES

78. Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## ATTORNEY'S FEES

79. Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND

ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## JURY DEMAND

80. Plaintiff hereby restates his request for a jury trial

## PRAYER

81. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

    a. Back Pay;

    b. Pre-Judgment Interest on Back Pay;

    c. Front Pay;

    d. Compensatory Damages, including, but not limited to, emotional distress;

    e. Attorney's Fees and Costs;

    f. Pain and suffering;

    g. Post-Judgment Interest;

    h. Such other and further relief, at law or in equity, general or special to which Plaintiff may show he is justly entitled.

Respectfully submitted,

**COANE AND ASSOCIATES, PLLC**

By: */s/Ashton P. Hoffman*
Ashton P. Hoffman
S.D. Tex #347693
TX Bar #24116525
Email: ashton.hoffman@coane.com
Bruce A. Coane, Attorney-in-Charge
S.D. Tex. #7205
TX Bar #04423600
Email: bruce.coane@gmail.com
Coane and Associates, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: (713) 850-0066
Facsimile: (713) 850-8528