United States District Court
Southern District of Texas
**ENTERED**
June 15, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOAZZAM PIRZADA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-0664 |
| | § | |
| AAA TEXAS, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Moazzam Pirzada ("Plaintiff") asserts claims against AAA Texas, LLC ("Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.[1] Pending before the court is Defendant's Motion to Dismiss and to Compel Arbitration ("Defendant's Motion to Compel Arbitration") (Docket Entry No. 12). For the reasons explained below, Defendant's Motion to Compel Arbitration will be granted.

### I.  Factual and Procedural Background

Plaintiff was hired by Defendant in August of 2014 and was promoted to Branch Manager in January of 2015.[2] Plaintiff signed

---

[1]Plaintiff's Original Complaint and Request for Injunctive Relief ("Complaint"), Docket Entry No. 1, pp. 1-2 ¶¶ 2-3. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2]Id. at 3 ¶ 13; Defendant's Answer to Plaintiff's Complaint, Docket Entry No. 11, p. 5 ¶ 13.

an arbitration agreement,³ which provided that "any and all Arbitrable Claims . . . will be subject to and be resolved exclusively by and through final and binding arbitration . . . ."⁴ The Agreement defined "Arbitrable Claims" as meaning "all claims of any nature or kind arising out of, relating to, or connected with this Arbitration Agreement or your employment with the Club . . . ."⁵ The Agreement clarified that it would require Plaintiff "to resolve through final and binding arbitration any and all disputes and claims between you and the Club, including, but not limited to, claims arising out of, related to, or connected with your employment or its termination."⁶

Plaintiff is Muslim and Pakistani.⁷ Plaintiff alleges that his supervisor (1) imposed onerous requirements and delay in granting Plaintiff's request for a religious accommodation, (2) gave Plaintiff negative performance reviews resulting in Plaintiff not receiving a pay raise, (3) imposed onerous requirements and delay in granting Plaintiff's Family and Medical

---

³Plaintiff's Memorandum of Law Opposing Defendant's Motion to Dismiss and to Compel Arbitration ("Plaintiff's Response"), Docket Entry No. 13, p. 2.

⁴Mutual and Binding Arbitration Agreement ("Arbitration Agreement" or the "Agreement"), Exhibit A to Defendants' Motion to Compel Arbitration, Docket Entry No. 12-2, p. 3.

⁵Id.

⁶Id.

⁷Complaint, Docket Entry No. 1, p. 3 ¶¶ 11-12.

Leave Act request, (4) removed Plaintiff from his branch in the Galleria area and reassigned him to the more remote Cypress branch, and (5) systematically understaffed Plaintiff's branches, all because of discriminatory and retaliatory bias.[8]

On June 3, 2021, Defendant filed its Motion to Compel Arbitration.[9]  Plaintiff responded on June 8, 2021.[10]

## II.  Legal Standard

In enacting the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., Congress "expressed a strong policy favoring arbitration before litigation, and the courts are bound to take notice of this broad policy as well as specific statutory provisions in dealing with arbitration clauses in contracts." J.S. & H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212, 214-215 (5th Cir. 1973).  The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

---

[8] Complaint, Docket Entry No. 1, p. 7 ¶ 48.  See also id. at p. 4 ¶¶ 23-25 (explaining Plaintiff's allegation that he was reassigned to the Cypress branch in retaliation for his refusal to treat two employees of different races unequally).

[9] Defendants' Motion to Compel Arbitration, Docket Entry No. 12, p. 1.

[10] Plaintiff's Response, Docket Entry No. 13, p. 1.

9 U.S.C. § 2. Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement. 9 U.S.C. § 4. "The party resisting arbitration bears the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act." Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992) (internal quotations and citation omitted).

Courts apply a two-step inquiry when ruling on a motion to compel arbitration. Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018) (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id.

"Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." Huckaba v. Ref-Chem, L.P., 892 F.3d 686, 688 (5th Cir. 2018) (citing Kubala v. Supreme Production Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016)). "[T]he party moving to compel arbitration must show that the agreement meets all of the requisite contract elements." Id. The movant must only prove the existence of an agreement by a preponderance of the evidence. Grant v. Houser, 469 F. App'x 310, 315 (5th Cir. 2012).

"[I]n step two of the analysis, determining the scope of a valid arbitration agreement . . . we apply the federal policy and

resolve ambiguities in favor of arbitration." Klein, 710 F.3d at 237 (internal citation omitted). "[W]hen a court interprets [] provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1218 (1995) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 109 S. Ct. 1248, 1255 (1989)).

### III. Analysis

Plaintiff concedes that he signed the arbitration agreement[11] but argues that (1) the arbitration agreement is invalid and unenforceable because it impermissibly limits Plaintiff's ability to conduct discovery[12] and (2) even if the court compels arbitration, it should stay rather than dismiss the case.[13]

**A. The Agreement's Limits on Discovery are Not Unconscionable**

Section 6 of the Arbitration Agreement allows the parties "to take the depositions of up to three individuals and any expert witness(es) designated by the other party, and to serve document requests and up to 35 special interrogatories."[14] It also states

---

[11]Plaintiff's Response, Docket Entry No. 13, p. 2.

[12]Id.

[13]Id. at 3.

[14]Arbitration Agreement, Exhibit A to Defendant's Motion to Compel Arbitration, Docket Entry No. 12-2, p. 7.

that "[t]he arbitrator has the authority to allow additional discovery, including the issuance of subpoenas, that he or she deems appropriate based upon a showing of 'good cause,' taking into account the parties' mutual desire to have a simple, informal, fast, and cost-effective dispute resolution mechanism."[15]

Plaintiff argues that the Arbitration Agreement's discovery restrictions have a "disproportionately negative effect on the plaintiff in an employment case" because (1) plaintiffs bear the burden of proof and (2) defendants in employment cases often possess "most of the evidence that a plaintiff would need to prove his or her case . . . ."[16] Plaintiff states that he would agree to participate in arbitration "[i]f the arbitration agreement had required the Federal Rules of Civil Procedure to be followed," but "restrictions on Plaintiff's rights to discovery that are more limiting than the Federal Rules of Civil Procedure are unconscionable."[17]

In determining the validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1921 (1995). Accordingly, the court looks to Texas state law to determine whether the arbitration agreement is unconscionable. "Under Texas law, unconscionability includes two

---

[15]Id.

[16]Plaintiff's Response, Docket Entry No. 13, pp. 2-3.

[17]Id. at 2.

aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 301 (5th Cir. 2004) (citing In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002)). Plaintiff appears to be arguing substantive unconscionability. "The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement." Id.

The Supreme Court considered and rejected an argument almost identical to Plaintiff's in Gilmer v. Interstate/Johnson Lane Corp., 111 S. Ct. 1647 (1991). The plaintiff in that case, who was suing his former employer for violations of the Age Discrimination in Employment Act, complained that the discovery allowed in arbitration was more limited than in federal court, which in turn would make it difficult for him to prove discrimination. Id. at 1654-55. The Supreme Court held that these limitations on discovery did not preclude arbitration of the plaintiff's claim, in part because the Court found it "unlikely . . . that age discrimination claims require more extensive discovery than other claims that we have found to be arbitrable, such as RICO and antitrust claims." Id. at 1654. Moreover, the Court held that the plaintiff had made no showing that the discovery provisions under the agreement would prove insufficient to allow him a fair opportunity to present his claims. Id. at 1654-55. The Court held

that while discovery in arbitration proceedings "might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'"  Id. at 1655 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3354 (1985)).

Plaintiff cites no authority for his argument that any discovery restriction that is more onerous than the Federal Rules of Civil Procedure is unconscionable.  The only relevant authorities that the court has found contradict this argument. See Gilmer, 111 S. Ct. at 1654-55; Carter, 362 F.3d at 298-99. Plaintiff asserts that the Arbitration Agreement's discovery restrictions "violate[] the procedures of JAMS and the American Arbitration Association[,]"[18] but again cites no authority and does not specify which procedures he means.  He argues that if the court determines to compel arbitration, all of the limiting provisions on discovery should be stricken.[19]  But he does not explain why this is necessary when the Arbitration Agreement explicitly empowers the arbitrator to "allow additional discovery, including the issuance of subpoenas, that he or she deems appropriate based upon a showing of 'good cause[.]'"[20]

---

[18] Id. at 1.

[19] Id. at 3.

[20] Arbitration Agreement, Exhibit A to Defendant's Motion to Compel Arbitration, Docket Entry No. 12-2, p. 7.

The court concludes that Plaintiff has not met his burden of showing that the Arbitration Agreement's limits on discovery will deny him a fair opportunity to present his claims. See Carter, 362 F.3d at 301. Defendant's Motion to Compel Arbitration will be granted.

**B.   The Court Will Stay the Case Pending Arbitration**

Plaintiff argues that this case should be stayed rather than dismissed because if Defendant refuses to arbitrate, Title VII's ninety-day limitations period may expire and the time to file suit may pass.[21] See Berry v. CIGNA/RSI-CIGNA, 975 F.2d 1188, 1191 (5th Cir. 1992) ("A civil action under Title VII must be brought within ninety days of receipt of a right-to-sue letter from the EEOC."); Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002) ("This requirement to file a lawsuit within the ninety-day limitation period is strictly construed.").

When all parties in an action are bound by an agreement to arbitrate, the court has discretion to dismiss the action. Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992). A court may use its discretion to dismiss such an action when "retaining jurisdiction and staying the action will serve no purpose." See id. However, courts have sometimes found that staying an action serves the useful purpose of "preserv[ing] a forum for redress in the event that arbitration fails to resolve

---

[21]Plaintiff's Response, Docket Entry No. 13, p. 4.

the claims." See, e.g., Steadfast Insurance Co. v. Frost Bank, Civil Action No. SA-17-CV-1222-XR, 2018 WL 3865415, at *2 (W.D. Tex. Aug. 14, 2018).

"'[A] demand for arbitration does not toll the statute of limitations.'" Fonseca v. USG Insurance Services, Inc., 467 F. App'x 260, 261 (5th Cir. 2012) (quoting United States ex rel. Portland Construction Co. v. Weiss Pollution Control Corp., 532 F.2d 1009, 1013 (5th Cir. 1976)). In Fonseca a plaintiff filed a demand for arbitration, but the AAA declined to serve as arbitrator because the defendant failed to pay the required fees. Id. When the plaintiff later filed suit the Fifth Circuit held that the action was time-barred, explaining that the plaintiff "could have (and should have) filed her suit within the statute of limitations and, thereafter, sought a stay of the action pending arbitration. . . . Such a course would have guaranteed that the lawsuit was brought within the limitations period without waiving any right to arbitration which may have existed." Id. Since Fonseca, courts in the Fifth Circuit have stayed cases based on plaintiffs' concern "that if arbitration does not proceed for any reason, the allowable time to file suit possibly will have passed." Valdez v. Texas Taco Cabana, L.P., No. A-14-CA-389-SS, 2014 WL 2980270, at *2 (W.D. Tex. July 1, 2014); see also Steadfast, 2018 WL 3865415, at *2 ("Following Fonseca, the Court will exercise its discretion to stay this case to preserve a forum for redress in the event that the arbitration fails to resolve the claims.").

The court in its discretion will stay the case pending arbitration but will require the parties to submit status reports every sixty days.

### IV.  Conclusion and Order

For the reasons explained above, Defendant's Motion to Compel Arbitration (Docket Entry No. 12) is **GRANTED**.

This case is **STAYED** pending arbitration.  The June 18, 2021, initial pretrial and scheduling conference is **CANCELED**.  The parties are **ORDERED** to submit a status report on August 13, 2021, and every sixty days thereafter.

**SIGNED** at Houston, Texas, on this the 15th day of June, 2021.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE